And Madam Clerk, can we call our first case please? 18-0580 consolidated with 18-0706 and 18-0759 in re J.D. All right. Will counsel on in re J.D. please approach? Good morning. Good morning, Your Honors. Please identify yourselves and tell us who you represent. I'm Christopher Williams, Assistant Public Guardian, and we represent the minor J.D. Good morning, Assistant State's Attorney Ashley Kuzak, on behalf of the people. All right. Good morning, Assistant Public Defender Greg Koster for the adjudicating of honor. All right. And Mr. Williams, do you want to identify other people? All right. And you both have adopted Mr. Williams' brief, so you won't be arguing today. Okay. And Mr. Williams, how much time would you like? I would like to have 15 minutes for review and reserve five minutes for rebuttal. All right. And Ms. Rousseau? The High Maize attorney has informed me that he plans to be adopting my argument. Okay. Great. And how much time would you like? 15 minutes. Okay. Great. All right. And as I'm sure you know, the microphone in front of you is not for amplification. It's just for recording. So if you could keep your voices up so we can all hear you, we would appreciate it. And with that, Mr. Williams, are you prepared to proceed? Okay. Good morning to the Court. May it please the Court, counsel. My name is Christopher Williams. I represent the minor, J.D. And we're asking that this Court reverse the trial court's denial of the public guardian's motion to adjudicate parentage in Alejandro. Our alternative relief is to allow Alejandro to retain party status in the case. Would you agree that Alejandro is time-barred, and we're talking only about the minor's ability to pursue a petition to disestablish parentage? I agree that the evidence appears that he is time-barred. There was no evidentiary hearing in the trial court clearly establishing that, although there is some evidence lending to that. I would say probably yes. Okay. I'd like to just follow up on that. Justice Mason said to disestablish parentage. My understanding is here, J.D. is trying to establish parentage. Yes, that's exactly correct, Your Honor, and that's a crucial distinction. And it's something that the State and the public guardian's briefing went back and forth on. Can you elaborate on that and why that is so important and the reason that he can do that without having to seek disestablishment? Well, it's important in terms of J.D. Right. Yes, right. So it's important because the parentage act, the way it's set up, there's a specific provision that relates to disestablishing parentage, and that sets forth a limitation period. But in this situation, the section 609 of the parentage act applies, and the State denies it. I believe the State denies that that's the fact. But what 609 does is it sets forth a limitation for when a child has an adjudicated or acknowledged parent for when you can adjudicate parentage in another man. So that fits the facts of this case. If the public guardian had simply sought to try to disestablish Jaime's parentage without a biological father being a party, then that would be a clear action to disestablish parentage. A different kind of limitation would apply. But this is definitely an action to adjudicate parentage in Hollyhockville brought by J.D. I'm sorry. The limitation period seems to exclude the child. So the child's ability to pursue a petition to establish parentage is unlimited in terms of the time when it can be brought. I think a clear reading of the statute shows that. And just following the plain language of the statute, that is the case. That doesn't mean that res judicata collateral estoppel never applied to the child. It's my job today to convince the court that res judicata collateral estoppel, what I would call the Grissmeyer rule, was improperly applied to J.D. in this case. So that's my job. But in terms of the ability, J.D.'s ability to bring the action to adjudicate parentage in Alejandro, he can do that. And Section 609, by logical inference, means that, yes, I.D.'s parentage would be disestablished within that action to establish parentage because it says when a child has an acknowledged parent, here's what people can do. If you're not a signatory to the VAP, I'll call it Voluntary Acknowledgement of Paternity Parentage, a VAP, for convenience, if that's okay. So I think we're good on that. The question is, is J.D. precluded because of the public guardian's decision in 2013 and 2014 to not put J.D. in a situation where he didn't have a legal father at all, right? So in 2013 and 2014, we did know that Jaime was not the biological father. We knew that he had signed a VAP. And we knew that there possibly was this other man out there, Alejandro, who was the biological father and had possibly taken the test. This was bare testimony from the mother. So at that point, J.D. decided not to disestablish parentage in Jaime. It would have gone against the purpose and policy of the Parentage Act. The Parentage Act, the purpose and policy in both the 1984 Act and the 2015 Act is to secure the support of parentage for children. So we had no reason to disestablish Jaime's parentage at that point. Alejandro, at that time, is there anything in the record that showed he had notice of the 2013 hearing? There is some bare assertion from the mother. Well, assertion from the mother, but there is nothing – is there anything in the record that indicates he received it, he got a notice? No, no, there isn't. He – that's an extremely important question, Your Honor, because the trial court specifically suggested back in the earlier proceeding to the caseworker, you should do a diligent search for Alejandro, try to find out where he is. And then the case just proceeded, you know, and they moved on. So there's nothing in the record other than some supposition from the mother that he had any idea. There's no – there's no – nothing that I can show any follow-up by the caseworker, is there? No. So – and that's a really important point. So, indeed, once Alejandro actually came under the jurisdiction of the trial court, and in the later proceeding, then a new proceeding emerged, a new proceeding, this proceeding to adjudicate Alejandro as the father. So – Well, but you – the GAL, the Public Guardian's Office, has not filed a petition to adjudicate Alejandro the father of J.D., is that right? I'm sorry, Your Honor, that's not correct, Your Honor. I drafted that – I drafted that petition, and its title – actually, the title is – there's a motion to allow Alejandro to retain party status in the case, and in the alternative, to adjudicate – To adjudicate him the guardian of J.D. That's what I saw in your brief and in the record, that it wasn't to adjudicate him the parent, because at this point, the Public Guardian doesn't know anything about Alejandro. And the suggestion to the trial court in the 2017 case was, let's evaluate J.D., let's see how trying to adjudicate Alejandro as his parent will affect him, and whether it's in his best interest to do that. I mean, does the Public Guardian know anything about Alejandro at this point? Well, we absolutely do, Your Honor. But again, I would say the Public Guardian's petition was not to make Alejandro a guardian. It was to make him parent to the parent. That's what the title of the motion is. You're saying you're plotting an alternative. Well, no, we asked that Alejandro be allowed to participate in the case, and in the alternative, that he be adjudicated. That's what I said, in the alternative. Right. Your motion's in the alternative. Yes. But we asked for both. But I'm focusing on the first part, which is very important. Right. So in answer to Your Honor's question about what we know about Alejandro, the fact is we know a great deal. We know that he and J.D. have a bond. J.D. understands that he is his biological father. And J.D. also has a bond with Jaime. It's very possible, and a very reasonable result in this case, would be to reverse the trial court with an order that Alejandro be named J.D.'s father, but allow Jaime to retain party status in the case. And admittedly, we did not ask for this in our brief, but here at Oral Argument, we know, as of today, J.D. is bonded with both of these men. And even though the Parentage Act under the law does not allow for best interest factors and best interest determinations, that's where our position is coming from. So we're trying to fit what we think is in J.D.'s best interest into what the law can allow for him. We can't argue best interest. You're not asking us in this appeal, which is from an order finding that race judicata and collateral estoppel barred J.D. from pursuing this relief. You're not asking us to, if we agree with you in reverse, to further find that Alejandro should be named J.D.'s father. We are, Your Honor. Does it have to be the subject of a hearing and a petition in the trial court? No, it has to be the subject of a petition. But again, I know that we filed our petition was styled with two sets of reliefs, but the alternative relief was to adjudicate Alejandro as the parent. That's definitely what we argued. But the issue the trial court got to before it got to that was that J.D. was barred by these doctrines. And so logically, we would not go ahead and resolve the merits. We'd send it back and say, no, he's not barred. Trial court, you go ahead and adjudicate the merits. That's a possible result, but I don't think there's anything left for the trial court to do. There's no hearing for the trial court to have. If this court finds that J.D. is not barred by a preclusive doctrine, the trial court has nothing left to do. Although, technically, Jaime could bring an action under Section 610 of the Parentage Act and say collateral estoppel should bar a parentage finding in Alejandro. That's a different set of the Parentage Act that is not really touched on in the brief, but that's a possibility. But there's nothing left for the trial court to do. And this goes to the issue of finality. I know the state is extremely concerned with finality, and so is the public guardian. But the thing is, here we are at the point of finality. And we're not asking for reversal and remand for a new kind of hearing, because there's nothing left for the – we know who the biological father is. But why should we – on what basis in the Parentage Act could we ourselves make that order? In that, on appeal, doesn't it seem, since the court never really reached it because it decided it didn't have the ability to do so, wouldn't it be better for purposes of the Act that it goes back to the trial court? If it's a simple matter, it'll be a simple matter. But I'm trying – what jurisdiction do we have to make that determination? Well, that would be a result that I would welcome. It's not my – it wouldn't be my first choice. That's a result I would welcome. I think that the appellate court – I guess talking about jurisdiction, I would refer to Rule 366, that Supreme Court Rule 366, that the appellate court can make any orders that should have been made. So I think it is possible for this court to say we're reversing. Grace Judicata actually did not bar J.D. And we know who the biological father is. We have a final determination. Now we know. And it's Alejandro. So the court can do that. If the court feels uncomfortable about that or wants to send it back to the trial court, that's understandable. I would certainly welcome that much more than outright rejection of my argument. That's for sure. But our first request is simply to instruct the trial court to name Alejandro as J.D.'s parents and also allow Jaime to remain the case. It's something the trial court can do. And we're asking for that under the law just because our little guy loves both these men, you know. But you're asking – your motion also was to adjudicate that Alejandro was the guardian of J.D. And I'm not sure that there's enough in the record to figure that part out. Then again, I believe that our motion was to – Okay. Say, for example, we agree with everything you said and said, yep, we're going to say Alejandro is a father that still leaves a question. Okay. He can be the father, but does he get to be – have custody of this child or does it have to be somebody else? Oh, certainly not. I don't see how we can decide that based on the record that we have. Oh, no. Certainly not, Your Honor. What we'd be saying is that the – go back and tell the juvenile court that you should make a finding that Alejandro is J.D.'s parent. But then the juvenile court case continues. I mean, and then the trial court makes the decision under the Juvenile Court Act, going through adjudication, which hasn't been decided yet for J.D., going through adjudication, going through a dispositional hearing. And then at that point, the trial court would have a number of options. So we're absolutely not asking this court to make any decisions based on that. That's definitely not before the court. That's an issue. But you did ask the lower court to decide that Alejandro should be the guardian of J.D. So are you abandoning that here? Again, I'm very sorry. I don't recall asking that. That's what you just said. The lower court has filed a petition to adjudicate Alejandro as a party and as the guardian of J.D. So I can scratch out guardian. Yes, I would apologize for that. Thank you. I would apologize for that, Your Honor. So I'm looking at the petition we filed in the juvenile court. It's titled, Miner's Petition to Allow Biological Father to Retain Party Status, Reserve the Miner's Right to Adjudicate Parentage and Biological Father, and in the alternative to adjudicate the biological father as the miner's legal parent. So if guardian was included in that, that is absolutely a mistake that confused the court. I apologize for that. We're not asking for any guardianship determination. Okay. So because you're permissing J.D.'s position on Section 609 of the Act, does it matter whether the previous order was final or not? Well, in that sense, in the context of 609, I would say no. But in the context of the application of the preclusive doctrines, yes. Under both Gladlestock and race judicata, you need a final order in order to prohibit J.D. from bringing that out. And we argue ostensibly it wasn't a final order. There's no identity of parties, and there's no identity of type of action. And this is a key thing because when Alejandro finally came to the jurisdiction of the trial court, that was a new action. Under the transactional test, you know, employed to determine Gladlestock, you know, it bleeds into the race judicata analysis. It was a different set of operations. Well, you're focusing on the fact that there's a new party, and that's Alejandro. Absolutely. The race judicata looks to whether the existing parties had the opportunity to litigate the issue before, and J.D. is the common party in both proceedings. Correct. And J.D. did not have the opportunity to litigate that because Alejandro had never been brought under the jurisdiction of the trial court, despite the court's admonition that he should be found. So then in the next proceeding, Alejandro appears, and we do find out from the real test, not just a rumor or the test, that he actually is the biological father. That's a new case, a new case, and the older case does not operate in a preclusive manner. My time, my time is short here. So if there's any more questions. If there's anything else to say, we're not. No, I would like to still reserve my five minutes if possible. Okay. Thank you, Your Honor. Thank you. Ms. Cusa? Good morning again, Assistant State's Attorney Ashley Cusa, on behalf of the people. And I just want to make clear, as you pointed out in the beginning, Alejandro and Vera Diana expressly adopt the minor's position in this case and don't assert any individual rights to challenge the 2013 paternity findings. And so I'll be focusing today, as I did in my brief, exclusively on the minor's claim. So here, the GAO, who knew Alejandro was the minor's biological father, but acquiesced to Jaime's 2013 paternity finding and then failed to seek relief within the statutory. But Alexandra was not a party to the 2013 hearings, right? Correct. He didn't know about it as far as what's in the record. There's nothing in the record to indicate he knew about it. There is. Vera Diana testified under oath during the 2013 proceedings that she had spoken to Alejandro not only about the pending child protection matter, but that she had specifically informed him of the January 2014 court date. Everybody could talk to somebody. That's not notice under the law. It's not legal. It's not legal notice. It's not legal notice to make him a party in the case, but it's most certainly notice in the context of what we're discussing here. Well, we're talking about legal in the case because we're talking about a preclusive effect that you want to impose on him. So we can't be loose about this. It just can't be, well, somebody mentioned it to him on the phone, so she testifies. But we don't know that that's not appropriate notice for an action which was not part of that action. This was completely different than what's going on in the 2017 act. The general court act requires the parties to have, excuse me, it requires the people to give notice to all of the parties to the action. And Alejandro in 2013, simply as the minor's biological father, didn't have party status because the- He didn't receive notice either. He wasn't entitled to notice in that proceeding. They couldn't adjudicate any kind regarding the VAP at that time because he would have to be a party. The jail certainly had the opportunity to fully and fairly litigate- How can you say that when the judge said, no, I'm not going to- The judge is trying to do something for the child at that time, right? Yes. He's trying, and Alejandro's not there, and we don't know anything at that time. There's no DNA testing, right? There is DNA testing, and Veridiana testified in the 2013- I don't care what she testified to. I'm talking about the court had not ordered a DNA test. Okay. Let me take this. I think what we're discussing here, the concept that we're discussing here under the preclusive doctrines that this is touching on, is the idea that the parties have to be the same parties or in privity. And it's our position that privity here was, in fact, satisfied because we know that Alejandro, the minor, and his mother all took the same position regarding paternity at the same points in time. But let me make really clear that while privity is important, it's not determinative in this case because the decision here is not being enforced against the party that didn't appear. So even if we don't have privity, as you're suggesting, the equities in this case support finding that the final element, the privity, of res judicata was met because Alejandro's decision to forfeit his opportunity to request a paternity finding doesn't now confer upon the minor the right to relitigate. It doesn't. It's just the opposite. Equities in this case show, under collateral estoppel at least, just the opposite because we're looking at a minor who apparently this is his father and he wants to have that adjudicated. And you say, no, the court's, we're not going to do that, even though the father wasn't present, even though that wasn't the purpose of the 2013 hearing. You're saying that that child cannot establish who his father is, real father. And we know that his real father is Alejandro. The minor had a number of opportunities to establish that. But how did he have that opportunity in 2013 when the judge didn't have Alejandro before him? Even the act says a child is not limited by any statute of limitations. Do you agree with that? No, I wouldn't. I believe that the Illinois Parentage Act is not being cited or referred to appropriately as your discussion with the GAL. And just let me make it clear really quickly. According to the Illinois Parentage Act, Section 205 of that act allows a child to file a petition to declare the nonexistence of a parent-child relationship but only within two years after the petitioner knew or should have known of the relevant facts. So the relevant facts, as we have them here, is that the GAL, the minor by and through his GAL, learned in June of 2013 that Jaime certainly was not his biological father and then also learned that Jaime, through Viridiana's testimony under oath, was likely his biological father. Alejandro, you mean. Excuse me. Alejandro, you said Jaime. Yes, that Alejandro was his biological father. And therefore, the minor was required to bring an action to declare the nonexistence of a parent-child relationship by January 2016 at the very latest. The GAL seems to focus on Section 609 of the Illinois Parentage Act, but that section does not apply to minors in any way. It is not written to apply to minors who are the subject of VAPs or adjudicated parentage. So Subsection A of Section 609 sets a two-year time limit for signatories to a VAP. Here, that would be Jaime or Viridiana. And that's on the basis of fraud, mistake, or duress, and that's two years from the date the VAP was executed. And then Subsection B sets a two-year time limit from the date that the VAP was executed for individuals, quote, other than the child who are not signatories but who seek an adjudication of parentage. So in that context, that's referring to Alejandro here. No, no, no. When we're talking about Alejandro, we're talking about J.D. So it says the child can go ahead and do this. No. That's exactly what you just read. It says, other than the child who is not a signatory but seeks an adjudication of parentage. Alejandro is seeking an adjudication of parentage. No. In the 2017 election? Yes. Well, more or less, he has an adjudication. More or less. His claim in 2017. Where's the petition? Where's the petition in the 2017? I would agree that, as you discussed with the GAL, there hasn't been, never to this day, actually filed a formal petition to declare the nonexistence of a parent and child relationship. It's not before us. But it's required by Section 205 of the Illinois Parentage Act. It hasn't been done. It hasn't been done. The only thing before us is the question that was presented by the GAL. And you're saying, well, this is being brought by the child. Yes. And what you just read says that the child wasn't barred from going ahead because the child is not a priority to the AP. What you have to remember is that you have to be able to read the Illinois Parentage Act as a whole. And we can't read Section 205 and Section 609 the way that you're interpreting it right now because if we interpreted Section 609 to give sort of no time limit whatsoever to the child to be able to challenge the VAP, then that renders Section 205 essentially ineffective, which expressly states that a child says a child is allowed to file a petition to declare the nonexistence of a parent-child relationship but then sets a two-year time limit to when the petitioner knew or should have known. And that's very clear in this case that the minor knew both that Jaime was not his biological father and that Alejandro was very likely his biological father. So Mr. Williams makes the point that in 2014 when they're going to adjudication on the first dependency case, the GAL, first of all, could have come to the conclusion that it wasn't in his client's best interest to disestablish parentage in Jaime because at that point it would leave JD with no father. And that based on the judge's comments, the GAL understood that if and when Alejandro showed up, maybe we would revisit that. So how does that play into? Well, I'll address it in two steps. First, with respect to, and I agree with the GAL, that certainly there is a policy in not creating a legal orphan and establishing parentage when we can. But what we knew here was prior to the final judgment that incorporated the paternity finding in the 2013 proceedings, the minor and the minor's GAL were aware of Alejandro's existence and the fact that he had been named as the biological father. So had the GAL at that point in time made a decision that it was not in the minor's best interest to have Jaime adjudicated his legal father, then it would have been incumbent upon the state to give service, as we were discussing before, to Jaime's father. And in order to do that, the state would have had to send formal summons to Alejandro to either default him in the matter or to bring him into court to establish paternity. Something would have had to have been done in that case. But because the GAL made a decision at that point in time that Jaime, and the record very much supports that this was in his best interest, as the GAL stated in court that this minor had known Jaime and grown up understanding Jaime to be his father. So it made a lot of sense that the public guardian at that point in time said and acquiesced and actually formally agreed in an adjudication stiff that Jaime was the legal father of the minor. And it was in the minor's best interest to do so at that point in time. Did I answer your question? Yes. Okay, thank you. But 310 says that the judge is not required or permitted to ratify an unchallenged voluntary acknowledgement. So in 2013 proceeding, Judge Kunt didn't. And it was only in 2017. And what you're saying doesn't make any sense that the judge in 2017 ordered DNA testing of both men. What I think, when you're discussing that, the public guardian advanced the very same argument. So if we have, saying that if we have an unchallenged BAP, then the issue of paternity isn't truly litigated and then there can be no final order. But the section that you cited, Section 310, states that, notes that when circuit courts are not required or permitted to ratify an unchallenged BAP, it means that circuit courts don't need to engage in further proceedings to establish parentage. That it allows the court to enter orders that are dependent on paternity findings, like, for example, child support orders, without engaging in further proceedings. So what the IPA does, under Section 310, is it doesn't bar or prohibit a circuit court from making paternity findings. To the contrary, it actually streamlines the process because it allows courts to presume paternity whenever there's an unchallenged BAP. What case said that? What case says what you just said? Is there any case that it has said that? There, um... Is your interpretation? This is your interpretation? I mean, it's really not. It's not my interpretation at all. In what case is it? I mean, we can move to almost any section of the Illinois Parentage Act. I'm not talking about any sections. This Act's been discussed by the Illinois Parent Court and the appellate courts in many cases. And I'm asking you that you just presented something as an argument. I want to know what the basis of any case that agrees with you. I do not believe that any party has actually ever advanced the argument that an unchallenged BAP results. So this is the argument that you're making as to how the Act might be interpreted. I'm just interpreting the statute as written. And my position is that it's a position... And they're interpreting it in a different way. So the question is which of the two we might wish to consider under the case law. When we're talking about it, if we think of just the plain sense meaning of the term ratify, right, we're not talking about the moment that a BAP is signed as valid. Because to ratify something means to make it valid, right? So if there's an unchallenged BAP, why would we need the courts to engage in a separate proceeding to make a determination of something that's already not contested between the parties? It just doesn't make sense. But if we have this BAP, it's allowing the courts to do things like, as Section 310 expressly states, enter child support orders, so an order that's dependent on a binding paternity, without engaging in an unnecessary proceeding. So that's the significance and the importance of voluntary acknowledgement of paternity. It's not saying that the Act as a whole, when you read it, it doesn't say that, you know, and I see the section that you're pointing to, a court or administrative agency is not required or permitted to ratify an unchallenged BAP. Because it's not necessary. It stands on its own as a presumption of paternity and allows the court to make, enter orders accordingly without being a separate hearing. But now in the 2017 action, we have a challenge. We have a child, and the most important thing we need to look to is whether this child had a whole and a fair opportunity to litigate the issue of paternity before the court during the 2013 proceedings. And we absolutely know that he did. No, we absolutely don't know, because we do know that the father, Alejandro, was not present. And we also know there's nothing in the record to show that he received legal notice, you know, notice that is appropriate under the Supreme Court rules and the statutes. So to say then that, and that issue wasn't raised. It was considered that, you know, the judge said, well, you can move that up at a different time. But obviously, the idea at that time was far different and the purpose was far different, was it not, than what was going on in 2017. The judge made no express reservation to the minor or to his counsel that the issue of paternity would be reserved. What the judge was basically acknowledging was that that was not an issue before at the time. So now it's an issue, and that's why. But Alejandro's claim was not an issue before the court at that time, because he said if Alejandro comes into court and asks, wishes to assert his rights as the minor's parent, I'll consider that at this point in time. But that was not the case. The case then was the minor, and what we have to focus on here, because Alejandro's not seeking to adjudicate his parentage. The minor did it in 2013 and now wants to do it again. Does the minor need to have the privative father there? No. Well, the presumed father was there that time. That's presumed. I'm talking about. Yes. And actually, when we're talking about privity, as we discussed before, we're talking about that in the context of res judicata. But there's also the doctrine of collateral estoppel, which much more liberally bars the minor from re-litigating this claim. And there's three elements to that perclusive doctrine as well. The third being, instead of privity, it says that the party against whom estoppel is being asserted, in this case the minor, had to have been a party in the prior adjudication. And most certainly the minor was not only a party, it was the subject. He was the subject of the proceeding and was represented by counsel from the inception of this case. We know that the juvenile court alerted, excuse me, the GAL alerted the juvenile court that Jaime may not be the minor's biological father and that the GAL explained to the court that the minor knows Jaime is not, the minor's family knows that Jaime is not his biological father, but has accepted his role as the minor's father in the family. And GAL was present when DNA proved that Jaime was not the biological father. And then the GAL informed the court, armed with this knowledge, that it had no objection to finding that Jaime was his legal father. So in 2014, when all of this is going on and this is what the minor knows or has reason to know, could the GAL then have said to the state, we want you to make Alejandro a party? Yes. Yes, absolutely. And just had to object and say, based on the DNA results as they appear before the court today, the GAL on behalf of the minor is objecting to a finding of paternity in this case. And at that point, there would have been an incumbent upon the state to notify Alejandro, who had been named as the biological father of the minor, with notice of these proceedings. And then Alejandro would have been brought into court, had to undergo the DNA testing that he did in 2017, or if he again decided he didn't want to appear, would have been defaulted in the matter. When we're talking about escapism, because I think what this case really comes down to and what the GAL seems to really be arguing is that these preclusive doctrines are equitable doctrines and that it would be unfair to preclude the minor from having his biological father as his legal father. But as I said before, the only relevant question here is whether this minor had a full and fair opportunity to litigate the issue of paternity in 2013. And in the context of paternity and estoppel on the relief of equitable grounds, the courts have to look to three things. First, if the petitioner had a meritorious claim, if the petitioner exercised due diligence in the original action to discover the claim, and if through no fault of the petitioner, the claim was not raised before the trial court in the original action. Now, did the minor in 2013 have a meritorious claim to disestablish the parentage of Jaime? Absolutely. Did the GAL on behalf of the minor exercise due diligence in the original action to discover such a claim? Absolutely. But we cannot say that through no fault of the minor or the GAL that the claim was not raised before the trial court in the original action because it was in fact raised before the trial court. The GAL knew that Jaime was not the biological father, but that Alejandro likely was and still opted to have the court enter the paternity findings as imposed. And you agree that a V.A.P. is a unique situation and not like any other kind of document that we're aware of. I mean, it has specific rules regarding it, and its purpose is for children. You agree with that? Yes. And so, but you're saying that equities favor your side, is that correct? Correct. The equities favor full and fair opportunity to each party to litigate something before the court. And you're saying it's fair that Alejandro, that the child should not be able to establish that Alejandro is his father. When we know that from the testing that it's his true father. Is that what you're saying? I'm saying that yes, at this point in time today, that is the state's position. And that is what, I know it's your position, but you're saying that that's what the statute, that's what the state legislature intended. Absolutely. And again, I'll point, redirect you to Section 205 that would, that allowed the minor in 2013, once with notice armed with facts of Alejandro's existence, had two years to file a petition to disestablish parentage in Jaime. He didn't file a, that's not where we're going here. Right? He didn't file this establishment. No, but he had the opportunity. But that's not what, that's not the issue here. Right? Establishment in Alejandro is the opposite. You keep saying it's the disestablishment, but that's not what was brought here. I don't believe that's correct. Because in order to establish parentage in a case where there's already been an adjudicated parent, it necessarily involves the disestablishment of parentage. So that would be the first step. And actually, if you look at Section 205, it's laid out that way because it discusses Section 205A. If you reread that, it discusses that a child is allowed to file a petition to declare the nonexistence of a parent-child relationship and then expressly state that thereafter at any point in time a minor can establish parentage in another individual. So I think it's very clearly laid forth in, by the statute. And if you think about sort of a- Well, we're still clear by the statute. I don't think we'd be here. Well, the plain language, it is confusing because we have, we're looking at multiple statutes in different, you know, different contexts. We also have the Juvenile Court Act, which imposes its own bars. We have these preclusive doctrines that impose their own bars. We have the Parentage Act, which, like I said, we have different sections that we're looking at. But if you really read it closely, it is, the plain language of it is very clear. And all of this, from a policy perspective, makes sense because the Juvenile Court Act, the purpose of the Juvenile Court Act is to provide these minors with finality and permanency in these cases. So what is important here is that the minor had the opportunity, not the unlimited opportunity, to really litigate claims over and over again at the minor's whim, but that the minor actually had the opportunity in 2013 and was represented by counsel and could meaningfully engage in those proceedings with respect to this issue. And that most certainly happened in this case. So, anything else? All right. For these reasons and those stated in the People's Brief, we ask that you affirm the Juvenile Court's decision to uphold its 2013 paternity findings  All right. Thank you. Mr. Williams? I'll be as concise and brief as possible. I reiterate my apology for putting in the word guardianship for what we want in terms of results in this case. That caused confusion. I apologize for that. We're not asking for that. Definitely our initial petition asked to adjudicate parentage in Alejandro. Again, I apologize for that confusion. I'll say this. If in 2017 or 2018 that J.D. came and said, you know, all of a sudden we decided we want to disestablish parentage in Jaime. Let's assume that Alejandro never came in. We would be precluded from doing that. Because we had the opportunity to do that in 2013. We had the opportunity to disestablish parentage in Jaime in 2013. Okay? But 2017 comes around. And then we have Alejandro, the biofather, coming in. And he comes in. We get the knowledge of relevant facts that he is actually the biological father, as opposed to a rumor that there was some online test taken. So we follow 609. And as I said in my opening discussion, section 609 says, if a child has an acknowledged or adjudicated parent, then an individual other than the child has this time limit in adjudicating parentage. As I said, that necessarily requires the second part of that is disestablishing parentage. The state is trying to say that what you've got to do first is disestablish parentage in Jaime and then have some other proceeding. I don't hear Ms. Cusa saying that. I hear her saying that in 2014, armed with the knowledge that Vera Diana had testified under oath, that Alejandro is the father, that she told him he was the father, that she told him about the proceedings and he was scared to come in, armed with that knowledge, the GAL could at that point have said, we don't want to proceed to adjudication on this without Alejandro. State, make him a party. Because we now know or have reason to know that Jaime is not the biological father, although he may be the legal father based on the fact. And we want everybody in here. So having foregone that available procedure, why should JD be able to do it years later? Well, I would respond to that by saying JD didn't quite forego that procedure because we know that the trial court asked that a diligent search be done. And we don't know the outcome of that. But to the end of giving Alejandro notice, nobody asked the trial court to make Alejandro a party. That's correct. But at that point, Alejandro, I mean, his existence and his connection to the case, it was based on sworn testimony. That's true. But it wasn't solid enough. I mean, it wasn't solid enough for JD to be. How do you get should have known, knew or should have known? I mean, when we talk about the statute of limitations, a lot of them are triggered by what the plaintiff knew or should have known. In all sorts of contexts. Well, that is true, Your Honor. I would say, just as a sort of wrap-up, that there's a long line of case laws stating that conclusive doctrines, and even as it relates to statute of limitations, I mean, should be relaxed and liberally construed when it comes to the welfare of children. So I do have, that general principle should be considered too. When thinking about the public guardian's opportunities in 2013 and 2014. And I would just wrap up by saying that, again, we have a full and fair opportunity to disestablish parentage in Jaime, but not to adjudicate parentage in Alejandro. I think forcing the public guardian to scour the city for a possible biological father who may be out there somewhere is an undue burden. And the Parentage Act doesn't contemplate that. The Institutional Court Act doesn't contemplate putting that burden on a minor. So with that, if there's any more, I don't know if there's any more questions. All right. I thank the Court for its time. Thank you very much. I thank counsel. And thank you. Thank you. Thank you both. Excellent arguments. Excellent briefs. You've given us a lot to think about. And we will take the case under advisement. We'll stand and recess briefly before our next case.